IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GWENDOLEN DELOPEZ,

        **Plaintiff,**

vs.                                                                          Civ. No. 19-735 JCH-KK

**BERNALILLO PUBLIC SCHOOLS,
DEMETRIA NAVARRETTE, in her individual
capacity, KEITH COWAN, in his individual
capacity, TAMIE PARGAS, in her individual
capacity, and ERIC JAMES, in her individual
capacity,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On November 21, 2019, Defendants Bernalillo Public Schools ("BPS"), Demetria Navarrette, Keith Cowan, Tamie Pargas, and Eric James (hereinafter, collectively, "Defendants") filed a *Motion and Memorandum for Partial Judgment on the Pleadings* (ECF No. 18). Defendants argue that under Federal Rule of Civil Procedure 12(c) they are entitled to judgment on the pleadings on Count I (Age Discrimination in violation of the Age Discrimination in Employment Act ("ADEA")), Count II (Retaliation in violation of the ADEA), Count III (Hostile Work Environment in violation of the ADEA), Count IV (Age Discrimination in violation the New Mexico Human Rights Act ("NMHRA")), Count VII (Constructive Discharge in violation of the ADEA), Count VIII (Constructive Discharge in violation of the NMHRA), and Count X (Breach of Express Contract). The Court, having considered the pleadings, motion, briefs, arguments, and applicable law, concludes that Defendants' motion should be denied as to their requests for judgment on the pleadings as to Counts I, II, III, VII, and X. As to Defendants' arguments concerning exhaustion of administrative remedies for claims brought under the NMHRA, because

Plaintiff seeks to submit the Order of Non-Determination issued by the New Mexico Human Rights Bureau ("NMHRB") as evidence to support her assertion that she exhausted her administrative remedies, the Court will treat the motion pertaining to exhaustion as one for summary judgment and will give the parties 30 days to present all material that is pertinent to the motion related to the exhaustion issue. The Court will therefore reserve ruling on whether to dismiss Counts IV and VIII until it reviews the evidence submitted in the summary judgment briefs.

## I.     LEGAL STANDARD

A motion for judgment on the pleadings provides a mechanism by which the court may dispose of a case or a claim as a matter of law. *See* Fed. R. Civ. 12(c). The standards governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) also govern a party's motion for judgment on the pleadings. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). When considering a motion for judgment on the pleadings, a court should accept as true and construe in the light most favorable to the non-moving party all well-pleaded facts in the complaint. *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004). For a party to survive a motion for judgment on the pleadings, a complaint must contain sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege either direct or inferential allegations on all the material elements of a claim and provide enough factual allegations for a court to infer the claim is plausible. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

According to Rule 12(d), if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Under Rule 12(d), a court has broad discretion whether to accept material beyond the pleadings or to refuse to accept extra-pleading materials and resolve the motion solely on the pleading itself. *See Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998). Reversible error may occur if a court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment. *Id.* If the court treats the motion as one for summary judgment, all parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). No conversion is required, however, when the court considers information that is subject to proper judicial notice or documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (quoting *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005)).

**II.    FACTUAL ALLEGATIONS IN COMPLAINT**

BPS hired Delopez as an elementary school art teacher for the 2008-2009 school year, where she worked and received performance evaluations of at least "Effective" at all times until the 2017-2018 school year. Compl. ¶ 14, ECF No. 1. For the two school years prior to 2017-18 school year, she received a "Highly Effective" teacher evaluation. *Id.* During the 2017-18 school year, Delopez principally taught at Carroll Elementary School ("Carroll"). *Id.* ¶ 15. The School Employee Contract signed by Delopez and BPS for the 2017-18 school year provided for adherence to New Mexico law and PED rules and regulations, a just-cause requirement for

termination of the contract, but only in accordance with the law, and a 30-day notice of resignation. *Id.* ¶ 50.

At the beginning of the 2017-18 school year, the BPS administration, and specifically the principal at Carroll, began a campaign of harassment, intimidation, disparate treatment, and hostility towards Delopez. *Id.* ¶ 15. In August 2018, Demetria Navarrette began "making improper comments to and about Delopez during staff meetings and/or approved of those who made such comments about Delopez and treated her disparately." *Id.* ¶ 16. The Carroll administration assigned Delopez more work duties and disparate requirements with respect to performing those duties. *Id.* ¶ 17. For example, the Carroll administration required a more strict and rigid sign in/sign out procedure for Delopez, despite that her duties required her to leave Carroll. *Id.*

In September 2017, Delopez complained to Keith Cowan, the Interim School Superintendent, and to Tamie Pargas, the Human Resource ("HR") Director, that Navarette was bullying her by making snide, inappropriate comments, making faces when Delopez spoke, and unfairly criticizing and humiliating Delopez in front of other teachers. *Id.* ¶ 18. Following these complaints, Navarrette retaliated against Delopez by not offering an educational assistant for Delopez's class, ignoring Delopez's requests for an assistant, failing to provide Delopez reasonable opportunities for professional development, denying Delopez a teacher's credit card when it had been previously approved, evaluating her unfairly, and refusing to provide help for the completion of her job duties. *Id.* ¶ 19. On September 21, 2017, Navarrette gave Delopez a verbal warning for raising her voice in a discussion with her Union representatives. *Id.* ¶ 20.

In December 2017, Navarrette yelled at Delopez in front of students and teachers without reason. *Id.* ¶ 21. A few days after meeting with Navarrette to discuss the unprovoked and improper conduct, Navarrette called Delopez into her office and falsely accused her of harshly speaking to

an educational assistant. *Id.* Delopez received discipline for the stated reason of speaking to another employee with a harsh tone. *Id.* ¶ 23. A week later, Navarrette told Delopez that the written reprimand would include the allegation that Delopez had intentionally peeled the scab off a student, causing the student pain. *Id.* ¶ 24. Although the allegation was without a factual basis, it was included in the reprimand that went into her personnel file. *Id.* In January 2018, Cowan and Pargas warned Delopez that any touching of a student, even accidental, warranted disciplinary action. *Id.* ¶ 26. They refused to discuss Delopez's written rebuttal to the formal reprimand. *Id.*

In February, Pargas informed Delopez that no more art supplies funding was available because of deadlines, which Delopez knew was untrue because the deadline was not until mid-April. *Id.* ¶ 27. Cowan and Pargas later aggressively questioned Delopez about a purported complaint to the Public Education Department ("PED"), which she had not made. *See id.* ¶ 28.

Two days later, Navarette gave Delopez her yearly evaluation, which was lower in every evaluation ranking except one. *Id.* ¶ 29. The evaluation included a "minimally-effective" rating, meaning a failure to meet expectations. *Id.* Only two years before this evaluation, BPS rated Delopez as "exceptional." *Id.* When Delopez asked why her ratings were lower, Navarrette replied that they were related to a literature teaching grade, which is not connected to what Delopez taught at BPS. *Id.* ¶ 30. Delopez complained that Navarrette prevented her from receiving professional development to meet this supposed standard. *Id.* ¶ 31. Delopez submitted a grievance protesting the performance evaluation on April 27, 2018. *Id.* ¶ 33. She also complained in the grievance about bullying, intimidation, and retaliation. *Id.* ¶ 36.

In a May 10, 2018 meeting with Delopez, Navarrette and James raised a new issue related to Delopez being compelled to remove a student from her class because of a threat to other students and disruption. *Id.* ¶ 37. Delopez physically picked up the student to remove him from the

classroom. *Id.* ¶ 38. Two other teachers present at the meeting said that Delopez acted appropriately in removing the student. *Id.* ¶ 39. It is not uncommon for a BPS teacher to have to remove a disruptive or dangerous student from a classroom. *Id.* ¶ 38.

At a second meeting later that afternoon, James told Delopez she either had to resign or face being reported to the PED for misconduct, placing her license in danger of revocation. *Id.* ¶ 41. The administration repeatedly told her that any reprimand related to removing the student from her classroom would not be placed in her personnel file nor reported to PED. *Id.* ¶ 42. The union representative at the meeting also urged her to resign. *Id.* Believing they were threatening her license and were determined to fire her, Delopez involuntarily resigned from BPS. *Id.*

Delopez filed a grievance about the May 10, 2018 reprimand, and on May 17, 2018, she wrote Cowan to request a meeting to get her job back and to contest the unlawful acts of the BPS administration and the individually named Defendants. *Id.* ¶¶ 43-44. After receiving no response, Delopez again wrote Cowan on June 11, 2018, to request an exit meeting to discuss her grievance and teaching license application. *Id.* ¶¶ 45-46. On June 18, 2018, Navarette filed a factually inaccurate complaint against Delopez's teaching license. *Id.* ¶¶ 48-49. Pargas presented the Licensure Complaint Form to PED on behalf of BPS. *Id.* ¶ 53.

On June 19, 2018, Delopez filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she was forced to resign her employment with BPS because of national origin and age discrimination and retaliation. *Id.* ¶ 8. On May 8, 2019, the EEOC issued its Notice of Right to Sue, which Delopez through her counsel received on May 17, 2019. *Id.* ¶ 9. Delopez filed this lawsuit on August 12, 2019. *See id.*

### III. ANALYSIS

    **A. Whether Plaintiff sufficiently alleged facts showing a causal connection between her age and the alleged adverse employment action**

Under the ADEA it is illegal for an employer to discharge or otherwise discriminate against any individual who is at least 40 years of age "because of such individual's age." 29 U.S.C. § 623(a)(1) and § 631(a). The Supreme Court interpreted "because of" to mean that age must be "the 'reason' that the employer decided to act." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009). An employee claiming disparate treatment under the ADEA may survive summary judgment by providing circumstantial rather than direct evidence of discrimination as set forth in *McDonnell Douglas*. *See Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1278 (10th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To make a prima facie case of age discrimination, Plaintiff must prove (1) she is over 40 years old; (2) she suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *See Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action. *Crowe v. ADT Sec. Services, Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011). If the defendant meets its burden, the burden of production returns to the plaintiff to show that the defendant's proffered rationale is pretextual, or that age was a determinative factor in the employment decision. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010).

Defendants contend that Plaintiff has not alleged enough non-conclusory facts suggesting that any adverse employment action was taken against her because of her age. Defendants argue that, other than a conclusory statement that she was treated less favorably than other younger teachers, Plaintiff did not assert a factual basis to support the contention. Additionally, they argue that Plaintiff failed to allege all the elements to make a prima facie case of age discrimination under the *McDonnell Douglas* burden-shifting framework.

Turning to Defendants' latter argument first, the Supreme Court has clarified that the prima facie case under *McDonnell Douglas* "in an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), *overruled on other grounds by Twombly*, 550 U.S. at 562-63. The usual rules for notice pleading apply in discrimination cases. *See id.* at 511. While a plaintiff does not need to plead a prima facie case of discrimination, she does need to plead enough facts to set forth a plausible claim, and looking to the elements of the cause of action helps a court determine whether the plaintiff has stated a plausible claim. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192-93 (10th Cir. 2012).

Turning to the allegations of her ADEA claim, Plaintiff alleges she suffered adverse actions including discipline, a hostile work environment, harassment, disparate treatment, and constructive discharge. Compl. ¶ 58, ECF No. 1. Plaintiff explained that the discipline included a September 21, 2017 verbal warning for raising her voice, *see id.* ¶ 20; a December 2017 written reprimand for speaking to another employee with a harsh tone and peeling the scab off a student, *see id.* ¶ 21-25; the May 10, 2018 threat to be resign or face being reported to PED for misconduct related to Delopez moving a student from her classroom, *see id.* ¶¶ 37-41; and a June 18, 2018 PED complaint submitted against her license, *see id.* ¶¶ 48-49. Plaintiff alleged that she is over 40 years of age, and despite her qualifications as a teacher, as shown through her tenure, knowledge, and performance evaluations, Delopez was treated less favorably than teachers who were younger than she. *Id.* ¶¶ 57, 60-61. Plaintiff has alleged that she was qualified for her job and that Defendants disciplined her, including constructively discharging her, for no reason or for false reasons. Plaintiff's complaint raises the inference of discrimination based on age to survive dismissal. *Cf. Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999) ("The firing of a qualified minority employee raises the inference of discrimination because it is facially illogical for an employer to

randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement.").

### B. Constructive Discharge Claims in Counts VII and VIII

The Tenth Circuit recognizes constructive discharge as an adverse action under the ADEA. *See Acrey v. American Sheep Industry Ass'n*, 981 F.2d 1569, 1573-74 (10th Cir. 1992). The standard for constructive discharge is whether the employer's illegal discriminatory acts created a workplace climate that would compel a reasonable person to resign. *Id.* Under New Mexico law, constructive discharge "is not an independent cause of action, such as a tort or a breach of contract;" but rather, the doctrine "permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure." *Gormley v. Coca-Cola Enterprises*, 137 N.M. 192, 194, 109 P.3d 280, 282 (2005). To show constructive discharge, the employee must allege enough facts "to find that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Id.* at 194-95, 109 P.3d at 282-83. After proving a constructive discharge, the employee must independently prove a breach of contract or tort in connection with employment termination. *Id.* at 194, 109 P.3d at 282 (quoting *Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022, 1030 (1994)).

Defendants argue that constructive discharge is not an independent cause of action, but another way to show an adverse action as part of a discrimination or retaliation claim, and thus the separate "Constructive Discharge" claims in Counts VII and VIII should be dismissed. If Plaintiff were intending to set forth a due process claim or a common law retaliatory discharge claim based on her constructive discharge, Defendants contend Plaintiff failed to plead enough facts to support

such a claim. Plaintiff responds that constructive discharge claims under the ADEA and NMHRA are stand-alone causes of action, which she adequately pled, and should not be dismissed.

While Plaintiff alleges separate claims entitled "Constructive Discharge" in Count VII (ADEA) and Count VIII (NMHRA), *see* Compl. ¶¶ 101-112, ECF No. 1, she also listed constructive discharge as one of several adverse actions in her ADEA discrimination and retaliation claims in Counts I and II, *see id.* ¶¶ 58, 68, and in her NMHRA discrimination and retaliation claims in Counts IV and V, *see id.* ¶¶ 80, 88. Plaintiff expressly invokes the ADEA and NMRA in Counts VII and VIII, respectively, and thus Counts VII and VIII are reasonably construed as asserting ADEA and NMHRA claims based on a constructive discharge theory, not as separate common law retaliatory discharge or due process claims.[1] Moreover, in her response, she relies on "the elements of an ADEA constructive discharge claim," Pl.'s Resp. 8, ECF No. 27, rather than on a due process or retaliatory discharge theory. While the ADEA and NMHRA constructive discharge claims may be redundant of some of her other claims, the Court will not dismiss them. Any issues concerning double recovery can be addressed with appropriate jury instructions, should the case go to trial.[2]

### C. Breach of Contract (Count X)

To prevail on a breach of contract claim, a plaintiff is required to prove a valid contract, breach of the contract, and damages caused by the breach. *See Constr. Contracting & Mgmt., Inc. v. McConnell*, 1991-NMSC-066, ¶ 10, 112 N.M. 371. Defendants do not dispute the existence of

---

[1] In Defendants' motion, they contend that Plaintiff failed to satisfy the elements for the common law tort of retaliatory discharge, and thus Counts VII and VIII should be dismissed. *See* Defs.' Mot. 5-6, ECF No. 18 (citing Rule 13-2304 NMRA). It was not until Defendants' reply that they set forth the elements necessary for a prima facie case of retaliation (as asserted in Count II) and argued that the Complaint failed to meet those elements. *See* Defs.' Reply 7-9, ECF No. 30. Defendants' motion did not give Plaintiff adequate notice of that issue. The Court therefore will not consider the argument adequately raised for the first time in a reply brief.

[2] Defendants filed a motion for summary judgment on November 16, 2020 (ECF No. 56). This Court will consider the issues raised in that motion in a separate Memorandum Opinion and Order.

an employment contract ("the Contract") between the parties. They contend, however, that Plaintiff failed to properly assert her compliance with the Contract and Defendant's alleged breach of the Contract where Plaintiff alleges that she resigned. Furthermore, Defendants argue that the allegations that Plaintiff allegedly physically touched at least two students was "just cause" to discipline her and terminate her employment.

According to the Complaint, the Contract stated that BPS would "need to have 'just cause' to terminate or discharge Delopez from her BPS employment;" "just cause" is a statutory requirement; and at no time did BPS have "just cause" to constructively terminate or discharge her employment. Compl. ¶¶ 124-25, ECF No. 1. Plaintiff asserts that BPS failed to abide by the "just cause" provision, which constitutes breach of the Contract. *Id.* ¶ 128. According to Plaintiff, BPS constructively discharged her when she "involuntarily resigned from BPS" due to their threats to her PED license. *See id.* ¶¶ 42, 125. The first question then is whether an involuntary resignation can constitute a breach of the "just cause" provision of the Contract.

"Any attempt by the Board to enter into a contract or promulgate a termination policy giving an employee rights in conflict with the School Personnel Act would be ultra vires and void." *Swinney v. Deming Bd. of Educ.*, 1994-NMSC-039, ¶ 9, 117 N.M. 492. The School Personnel Act ("SPA") defines "just cause" as "a reason that is rationally related to a school employee's competence or turpitude or the proper performance of the school employee's duties and that is not in violation of the school employee's civil or constitutional rights" N.M. Stat. Ann. § 22-10A-2(F). It defines "discharge" as "the act of severing the employment relationship with a licensed school employee prior to the expiration of the current employment contract." *Id.* § 22-10A-2(B). To "terminate" an employee is "the act of severing the employment relationship with a school employee." *Id.* § 22-10A-2(R).

As Defendants contend, the SPA's definitions for "discharge" or "terminate" do not expressly encompass constructive discharge. Nevertheless, the New Mexico Supreme Court has recognized the constructive discharge doctrine as a means that allows an employee to recast a resignation as a de facto firing. *See Gormley*, 137 N.M. at 194, 109 P.3d at 282. The *Gormley* court indicated that this doctrine applies in breach of contract claims. *See id.* ("*Even after establishing constructive discharge, an employee must independently prove a breach of contract* or tort in connection with employment termination in order to obtain damages for wrongful discharge.") (italics added) (quoting *Turner*, 876 P.2d at 1030). *See also Douglas v. Orkin Exterminating Co., Inc.*, 215 F.3d 1336, 2000 WL 667982, *4 (10th Cir. May 23, 2000) (recognizing that "plaintiff had stated claims for breach of contract and breach of the implied covenant of good faith and fair dealing because 'in Wyoming, a choice to resign or be fired is recognized as constructive discharge") (quoting *Jewell v. North Big Horn Hosp. Dist.*, 953 P.2d 135, [140] (Wyo. 1998)). The New Mexico Supreme Court's recognition of a de facto termination does not necessarily conflict with the SPA, and Defendants have not cited authority suggesting that the common law constructive discharge doctrine for breach of contract claims cannot apply to employees subject to the SPA.

Sufficiently adverse employment actions that may constitute a constructive discharge include overt pressure to leave and accept early retirement and threats of being fired. *Martinez v. Southwest Cheese Co., L.L.C.*, Civ. No. 12-660 KG/WPL, 2014 WL 11430955, *9 (D.N.M. July 10, 2014); *Gormley*, 137 N.M. at 195, 109 P.3d at 283. Plaintiff alleged that she was pressured and forced to resign through threats to her teaching license. *See* Compl. ¶¶ 42, 51, ECF No. 1. Plaintiff also asserted that a week after involuntarily resigning, she made a written request to get her job back, but Defendants refused to consider her request and reinstate her, so she was constructively

terminated. *See* Compl. ¶¶ 42-48, 125, ECF No. 1. These allegations are sufficient to plausibly state a claim that she was de facto terminated from her employment.

As for Defendants' argument that the allegations of the complaint stating that Plaintiff allegedly physically touched at least two students met the "just cause" requirement to terminate her employment, the Court disagrees. Plaintiff asserted that the allegation concerning her intentionally peeling the scab off a student "was without any factual bases." *Id.* ¶ 24. As for the allegation against her that she physically picked up a student and removed him from the classroom, Plaintiff alleged that it was not unusual or uncommon for a BPS teacher to have to remove a disruptive or dangerous student and that two teachers agreed she acted appropriately under the circumstances. *See id.* ¶¶ 37-39. Plaintiff contends that BPS teachers who engaged in this same sort of conduct have not been disciplined or reprimanded in anyway. *See id.* ¶ 40. The Court must construe the facts in the complaint in Plaintiff's favor at this stage, and thus, Plaintiff has alleged sufficient facts that Defendants did not have just cause to fire her to survive dismissal.

### D. Exhaustion of NMHRA claims

Unlike its federal counterpart, individual liability claims are cognizable under the NMHRA. *Compare Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999); *with Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13, 130 N.M. 238. To bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative grievance process with respect to all defendants named in the district-court lawsuit. *See Sonntag*, 2001-NMSC-015, ¶ 13; *Luboyeski v. Hill*, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994). The burden to prove exhaustion lies with the plaintiff. *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 11, 314 P.3d 681.

To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the NMHRB or the EEOC making sufficient allegations to support the complaint; and (ii)

receive an order of non-determination from the NMHRB. *See Mitchell-Carr v. McLendon*, 127 N.M. 282, 286-87, 980 P.2d 65, 69-70 (1999). The statute further provides that the written complaint must "state the name and address of the person alleged to have engaged in the discriminatory practice, all information relating to the discriminatory practice and any other information that may be required." N.M. Stat. Ann. § 28-1-10(A). Notably, a right-to-sue letter from the EEOC does not substitute for an order of non-determination from the NMHRB under New Mexico law. *See Mitchell-Carr*, 127 N.M. at 286-87, 980 P.2d at 69-70.

According to Defendants, Plaintiff failed to allege that she exhausted her administrative remedies under the NMHRA or that she exhausted her administrative remedies against individually named Defendants Navarrette, Cowan, Pargas, and James. In response, Plaintiff contends that she did, in fact, receive an order of non-determination letter from the NMHRB, and that, based on *Lobato v. State Env't Dept.*, 2012-NMSC-002, 267 P.3d 65, she sufficiently exhausted her claims against the individual defendants. Although Plaintiff alleged in her Complaint that she received a right-to-sue letter from the EEOC, she did not allege that she received an order of non-determination from the NMHRB. Nor did she allege that she exhausted her NMHRA claims. Plaintiff's Complaint on its face thus does not establish exhaustion under the NMHRA for any of the Defendants.

Nevertheless, Plaintiff attached to her response a copy of the EEOC Charge of Discrimination and the December 5, 2019 Order of Non-Determination issued to her by the NMHRB. *See* Pl.'s Ex. 1 and 2, ECF No. 27-1 and 27-2. Plaintiff's EEOC Charge names BPS but does not list any individual defendants in the section for particulars. Pl.'s Ex. 1, ECF No. 27-1. While "Defendants concede that the Court may use documents outside the four corners of the pleadings in determining this issue," Defs.' Reply 13, ECF No. 30, for the reasons discussed *infra*,

14

the Court will use its discretion to determine this issue on summary judgment briefs so that it will have the aid of a more developed record.

In arguing that her NMHRA claims against the individual Defendants should not be dismissed for failure to exhaust, Plaintiff relies on *Lobato*. In *Lobato*, the plaintiff filed complaints with the EEOC against his employer for violation of Title VII by using the NMHRD's official Charge of Discrimination form, which only required him to name his "Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency." *Id.* ¶¶ 2-3. Nothing on the form instructed him to add identification for individual agency employees involved in the alleged discrimination. *Id.* ¶ 3. The defendants moved to dismiss the individual defendants for failure to exhaust administrative remedies, but the district court denied the motion for those defendants identified by their job positions within the "PARTICULARS" narrative on the form and certified the question of whether the standard form provided a fair and adequate opportunity to exhaust administrative remedies against individual actors under the NMHRA. *Id.* ¶ 5. The New Mexico Supreme Court explained that the form did not indicate to filers to report the person involved, and the EEOC's use of a more detailed questionnaire did not remedy the problem, because EEOC claims are resolved independently and the open-ended request to state particulars did not inform the filer that he must also provide the names and addresses of the individuals involved. *Id.* ¶ 9. Consequently, the New Mexico Supreme Court reasoned that the form was inadequate to its statutory purpose, was affirmatively misleading, and created "a trap for unwary claimants to forfeit their statutory rights and judicial remedies." *Id.* ¶ 10. It thus held that the form failed to provide filers a fair opportunity to exhaust administrative remedies against individual defendants as required by the NMHRA. *Id.*

The *Lobato* court then examined the proper remedy, weighing the harm to the plaintiff against the defendants' right to notice and an opportunity to resolve the claims in the administrative proceeding. *Id.* ¶ 11. It concluded that the harm to the plaintiff in following explicit and misleading instructions was a greater injustice than the defendants' lack of formal notice, because they were likely had constructive notice of their alleged involvement. *See id.* ¶ 11, 14. Because his suit arose out of the very incidents reported in the forms, the Supreme Court held "in these limited circumstances the requisite administrative exhaustion of the NMHRA should not be required in order for Plaintiff to pursue his judicial remedies under the statute." *Id.* ¶ 14.

Courts have interpreted the "unwary claimant" to which *Lobato* refers as one that filed the charge without the advice of counsel. *See, e.g., Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F.Supp.3d 1107, 1114 (D.N.M. 2015) (explaining that, because plaintiff had already consulted with an attorney before she filed the Charge of Discrimination form, she did not fit *Lobato*'s description of an unwary plaintiff). Plaintiff asserts that there "is no evidence" she had the assistance of counsel when she filled out the EEOC Charge form. Pl.'s Resp. 12, ECF No. 27. Plaintiff, however, has the burden to show that she met the exhaustion requirement, and thus she needs to provide the Court with evidence that *Lobato* applies to her. Although counsel argues in his response that Delopez filed the charge without the assistance of counsel, that fact is neither in her complaint nor did she submit evidence of that fact. Because it is unclear whether Plaintiff was the type of unwary claimant contemplated by *Lobato* when she filed her EEOC charge, the Court will convert the motion on this issue to one for summary judgment and give the parties a reasonable opportunity to submit all the material they have that is relevant to this issue under Rule 12(d).

Defendants also assert that Plaintiff had the assistance of counsel while her charge was still pending before the NMHRB, so her counsel could have amended the charge and provided the

16

individual defendants with the requisite notice. Indeed, the record shows Plaintiff filed her federal lawsuit with the assistance of counsel on August 12, 2019, and in that original complaint asserted causes of action under the NMHRA. Yet, the NMHRB did not issue its Order of Non-Determination to Plaintiff until December 5, 2019, potentially affording her counsel time to have amended the charge to clarify that she was charging individual defendants before the administrative procedures before the NMHRB ended. Although Defendants cited the EEOC website that permits amendment of the charge, the parties did not supply the Court will any law indicating that Plaintiff could have timely amended her complaint with the NMHRB on or after the time she secured counsel. Finally, neither Plaintiff's allegations in the Complaint nor the evidence indicates that the individual defendants were named in the charge or any attachments. Constructive notice to the individual defendants was a factor the *Lobato* court considered, but the record is unclear as to whether Plaintiff submitted any attachments to her EEOC charge identifying or describing the actions of individual Defendants. Summary judgment submissions would enable the parties to address these issues.

**IT IS THEREFORE ORDERED** that Defendants' *Motion and Memorandum for Partial Judgment on the Pleadings* (**ECF No. 18**) is **DENIED** as to their requests for judgment on the pleadings as to Counts I, II, III, VII, and X. The Court **RESERVES RULING** on Defendants' request to dismiss the NMHRA claims in Counts IV and VIII based on the failure to exhaust administrative remedies. The parties must file their submissions on the exhaustion issue in accordance with Rule 12(d) **within 30 days** from the filing of this Memorandum Opinion and Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE